UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GENGSHU SCOTT HE, *et al.*,

        *Plaintiffs*,

  v.

ANTONY BLINKEN, in his official capacity, and the UNITED STATES OF AMERICA,

        *Defendants*.

No. 22-cv-1137 (DLF)

## MEMORANDUM OPINION

Gengshu He and his family bring this action against Antony Blinken, in his official capacity, and the United States (together, the United States) for various wrongs He says he suffered as an employee of the State Department. The United States moves to dismiss He's Second Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the Court will grant the motion in part and deny it in part.

## I.    BACKGROUND[1]

He is a former State Department employee and an American citizen of Chinese descent. Second Am. Compl. ¶ 5, Dkt. 21 (Compl.). He is married to Jun Zhang, also a Chinese American and American citizen. *Id.* ¶ 6. The couple lives with Zhang's parents, Wenqing and Rong Zhang, and two minor children in Virginia. *Id.* ¶¶ 6–8.

He's problems began in March 2019, when Michael Thomas Peart, a law enforcement officer employed by the State Department's Bureau of Diplomatic Security, "slapped him on the

---

[1] For purposes of this opinion, consistent with the applicable legal standard, the Court assumes that the material factual allegations in He's operative complaint are true. *See Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

1

shoulder and back . . . while [he] was working at his workstation in the State Department." *Id.* ¶¶ 10, 39–40. Peart called him a "troublemaker" and an "immigrant" and then "ordered [He] to follow" him to a conference room. *Id.* ¶¶ 41, 43, 45. In the meeting that followed, Peart and another officer, Brian Otrowski, accused He of misconduct and threatened to prosecute and arrest him. *Id.* ¶¶ 55–56. Both referenced He's "immigrant background" and "status as a former immigrant from China." *Id.* at 51–52; *see id.* at ¶¶ 57–58. Later in March, Peart "followed up with calls and emails to [He]" and "demanded that [He] confess" to wrongdoing. *Id.* ¶¶ 71–74.

He left the State Department for the Department of Agriculture in May 2020, only to return to the State Department in a more senior role in November 2020. *Id.* ¶¶ 78–84. In February 2021, however, Peart accused He of improprieties again. This time, Peart sent He an email alleging "MISCONDUCT RELATED TO EVENTS ON THE EVENING OF 11/3." *Id.* ¶ 86 (capitalization in original). And at "around 4:00 p.m." on "the afternoon of Friday, February 12, 2021," with He and his family "quarantined in their home, preparing to celebrate [the] Chinese New Year," Peart arrived on He's doorstep with another Diplomatic Security officer, Kenneth Velez, Jr. *Id.* ¶¶ 88, 91, 98–99; *see id.* ¶ 1.

An altercation ensued on the doorstep. In He's telling, after a verbal confrontation, "Peart . . . reached and grabbed He's wrist while He was inside the threshold of his home." *Id.* ¶ 107. "He pulled back and told Peart to keep his distance . . . . [b]ut He did not believe that he was free to close the door to his home, ignore Peart and Velez, or otherwise leave the scene." *Id.* ¶¶ 108–09. After that, "[o]ne of He's sons was visible to Peart, and Peart made a pretend gun using his forefinger and thumb and, pointing it at He's son, pressed his thumb down as if to shoot He's son. Peart laughed, and then muttered 'little chink.'" *Id.* ¶ 114. "For several weeks" after, "both" of He's children "had nightmares." *Id.* ¶¶ 121.

2

February turned into March. He contracted COVID-19 and quarantined, as did his children. *Id.* ¶¶ 127–30. During that period, "upon advice from" his supervisor, He "filed a harassment complaint with the State Department's Office of Civil Rights" against Peart. *Id.* ¶ 130. The next day, "Peart emailed" He's supervisor and "published . . . school and health information" relating to He's son. *Id.* Peart also requested information on He's own "medical situation" and told He's supervisor that, "without that information, Peart would be forced to conduct a 'welfare check' on He at He's home." *Id.* ¶¶ 132–33.

He resigned from the State Department in 2021 and then filed this action. *Id.* ¶ 135. His Second Amended Complaint seeks relief against the United States (1) for employment discrimination under Title VII, (2) for retaliation under Title VII, for (3) battery on He, (4) assault on He, and (5) false imprisonment of He under the Federal Tort Claims Act, and (6) for assault on He's family under the Federal Tort Claims Act.[2] *Id.* ¶¶ 140–203. The complaint demands injunctive relief, compensatory and consequential damages, and "any other relief as allowed by law." *Id.* ¶¶ 153, 167, 175, 182, 196, 203.

The United States moves to dismiss. Dkt. 22.

## II.  LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible

---

[2] He's initial complaint asserted claims against the Department of State for discrimination (race and national origin) under Title VII, a claim of disability discrimination under the Rehabilitation Act, and claims against Peart and Velez for common law torts and under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). *See generally* Complaint, Dkt. 1. Subsequently, the plaintiffs added claims against the United States under the Federal Tort Claims Act and removed the Rehabilitation Act and individual claims. *See generally* Amended Complaint, Dkt. 17.

on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim "allows [a] court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In the context of the Federal Tort Claims Act, "all elements of a meritorious claim are also jurisdictional." *Brownback v. King*, 141 S. Ct. 740, 749 (2021). "Because 'a federal court always has jurisdiction to determine its own jurisdiction,'" it "can decide an element of an FTCA claim on the merits if that element is also jurisdictional." *Id.* at 750 (quoting *United States v. Ruiz*, 536 U.S. 628 (2002)). The court "may 'undertake an independent investigation'" that examines "facts developed in the record beyond the complaint" to "'assure itself of its own subject matter jurisdiction.'" *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (quoting *Haase v. Sessions*, 825 F.2d 902, 908 (D.C. Cir. 1987)).

## III. DISCUSSION

For the reasons given below, the Court will dismiss He's Title VII employment discrimination and retaliation claims, along with his claim for assault on his family members, for failure to state a claim. It will stay further proceedings on He's remaining tort claims pending administrative proceedings under the Federal Employees' Compensation Act (FECA), 42 U.S.C. § 8101 *et seq.*, by the Department of Labor.

### A. Employment Discrimination

Under Title VII, "[a]ll personnel actions affecting employees . . . in executive agencies . . . [must] be made free from any discrimination based on race . . . or national origin." 42 U.S.C. § 2000e-16(a). "Although this language differs from that of [Title VII's] provision governing private employers," the D.C. Circuit has held that both "contain identical prohibitions." *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007).

4

He does not contend, and his complaint does not suggest, that the State Department took official "personnel actions" against him or altered the formal "terms, conditions, or privileges of [his] employment." 42 U.S.C. §§ 2000e-16(a), 2000e-2; *see Chambers v. District of Columbia*, 35 F.4th 870, 873–74 (D.C. Cir. 2022) (en banc). Instead, he argues that Peart and Velez made his working conditions so intolerable that he had no choice but to quit. Compl. ¶¶ 145, 147. In other words, He seeks relief for workplace harassment or a "hostile work environment." *See* Pls.' Mem. of L. in Opp. to Defs.' Mot. to Dismiss at 2–6, Dkt. 24 (proceeding only on a hostile work environment theory); Compl. ¶ 15 (explaining that the EEOC characterized He's charge, at the administrative level, as one for a "hostile work and living environment").

"Under Title VII, an employer's liability for [workplace] harassment may depend on the status of the harasser." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). "If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Id.* "In cases in which the harasser is a 'supervisor,' however," the employer is vicariously liable subject to certain affirmative defenses. *Id.*

"An employee is a 'supervisor' . . . if he or she is empowered by the employer to take tangible employment actions against the victim." *Id.* "Tangible employment actions" involve "a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Id.* at 431 (quoting *Burlington Indust., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)); *see Lyles v. Dist. of Columbia*, 17 F. Supp. 3d 59, 69 n.5 (D.D.C. 2014).

Against this backdrop, He has not pled a plausible workplace harassment claim. At the outset, He has not adequately pled that Peart, Velez, or Otrowski supervised him. Nothing in his complaint suggests that those officers could hire him, fire him, promote him, reassign him, or

5

adjust his benefits.  At most, it suggests that they could investigate He and make recommendations to his superiors as a result of their investigation.  *See* Compl. ¶¶ 10–11 (describing Peart and Velez's investigative authority).  That is not enough to make them supervisors.  *See Vance*, 570 U.S. at 432 (explaining that "ability to direct a co-worker's labor to some ill-defined degree" is not enough); *cf. Joyner v. Morrison & Foerster LLP*, No. 20-cv-1440, 2023 WL 6313194, *7–8 (holding that a law firm associate, who trained the plaintiff, "otherwise oversaw [the plaintiff's] work," and later communicated about the plaintiff's firing with coworkers, did not "supervise" or exercise "authority" over plaintiff).

As a result, He's complaint must plausibly plead that the State Department negligently supervised Peart, Velez, and Otrowski—that it "knew or should have known of [their] harassment and failed to implement prompt and appropriate corrective action." *Curry v. District of Columbia*, 195 F.3d 654, 660 (D.C. Cir. 1990).  But his complaint does nothing of the sort.  It does not allege that the Department ignored cries for help from He or that Peart's conduct was so out of line that the Department should have learned about it on its own.  Indeed, when He reported harassment, "the [Department] responded quickly and reasonably." *Id.* at 661.  He's supervisor advised him to file a complaint with the Department, and he did so.[3]  Compl. ¶ 130; *see Curry*, 195 F.3d at 661 (finding absence of negligence as a matter of law when employer "established an effective complaint procedure," "reli[ed] on its employees to bring problems with their co-workers to its attention," and "responded quickly and reasonably" to complaints).

---

[3] In addition, He's opposition to the Department's Motion to Dismiss does not contend that his complaint states a claim for negligence against the Department, only that Peart and others were He's supervisors. *See* Pl.'s Mem. in Opp. at 4–5.  As a consequence, He has forfeited any argument that the Department negligently supervised Peart, Velez, and Otrowski.

That "Peart was a law enforcement official of the State Department" who "threatened [He] with arrest and prosecution . . . [along] with adverse employment consequences," Pl.'s Mem. in Opp. at 4, does not mean that Peart supervised He. The key question is whether Peart could take tangible employment actions against He, not whether Peart could influence his career more broadly. *Vance*, 570 U.S. at 424. After all, *every* U.S. Marshal, inspector general, or other law-enforcement official can investigate federal employees within their jurisdiction. Sometimes those investigations carry significant adverse career consequences. Federal law enforcement officials do not thereby "supervise" every federal employee inside their area of authority.

The Court also recognizes that "fact question[s]" are "not amenable to resolution upon a motion to dismiss." Pl.'s Mem. in Opp. at 4. Still, to survive the Department's motion to dismiss, He's complaint must plausibly allege that Peart, Velez, or Otrowski supervised him and/or that the Department negligently failed to halt their abuse. *Joyner*, 2023 WL 6313194 at *8 ("conclusory allegation[s]" are not enough). His complaint does neither.

For these reasons, the Court will dismiss Count I of He's complaint without prejudice for failure to state a claim.

**B.     Retaliation**

Independently, Title VII "prohibits the federal government from retaliating against employees who engage in protected activity, including complaining of employment discrimination." *Mount v. Johnson*, 174 F. Supp. 3d 553, 560 (D.D.C. 2016) (Brown-Jackson, J.). "To prove unlawful retaliation" in this Circuit, a plaintiff must show: (1) that she opposed a practice she reasonably thought violated Title VII; (2) that her employer took adverse action against the employee; and (3) that the employer acted "because" of the employee's opposition to the practice. *See McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012). Actions count as

"adverse" in the retaliation context when they might "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

He's complaint does not state a claim for retaliation because it does not plausibly allege that the State Department took adverse action against him. *See McGrath*, 666 F.3d at 1380 (requiring retaliation by *employer*). Although Peart may have continued to harass He after he complained to the Department, the Court cannot attribute Peart's conduct to the Department for the reasons stated. *See Gordon v. Beers*, 972 F. Supp. 2d 28, 35 (D.D.C. 2013) (applying hostile-work-environment principles "equally" to retaliation claims). Accordingly, the Court will dismiss Count II of He's complaint without prejudice for failure to state a claim.

### C.     Torts on He

Counts III, IV, and V of He's complaint seek relief under the Federal Tort Claims Act for alleged torts against He. The United States contends that the Court cannot adjudicate these claims until the Department of Labor determines whether they fall within the perimeter of the Federal Employees Compensation Act (FECA). Defs.' Reply in Supp. of Mot. to Dismiss at 9–10 & n.4, Dkt. 26. The Court agrees and will stay adjudication of these claims pending a FECA determination.

Under FECA, "[t]he United States shall pay compensation . . . for the disability or death of [a federal] employee resulting from personal injury sustained while in the performance of his duty." 5 U.S.C. § 8102(a). "The liability of the United States . . . under [FECA] is exclusive . . . of all other liability of the United States," including liability under the FTCA. *Id.* § 8116(c). Because FECA's exclusive-liability provision "carves out certain suits . . . from the FTCA's

sovereign-immunity waiver," it limits this Court's jurisdiction. *Jones v. United States*, 318 F. Supp. 3d 15, 19–20 (D.D.C. 2018).

"The Secretary of Labor shall determine" whether compensation is available under FECA, 5 U.S.C. § 8124(a), and her decisions are "final and conclusive for all purposes and with respect to all questions . . . and not subject to review . . . by a court by mandamus or otherwise," *id.* § 8128(b). Consistent with this statutory scheme, "the Secretary of Labor must be given the primary opportunity to rule on the applicability of the Act" to particular cases unless a "plaintiff's injuries [are] clearly not compensable under [FECA]." *Daniels-Lumley v. United States*, 306 F.2d 769, 771 (D.C. Cir. 1962); *accord Jones*, 318 F. Supp. 3d at 20–21.

In this case, it is not true that He's "injuries [are] clearly not compensable under [FECA]," meaning the Court may not adjudicate his FTCA claims before the Department of Labor does so. *Daniels-Lumley*, 306 F.2d at 771. The Department has previously entertained FECA claims in cases, like this one, where a claimant alleges that job-related matters caused her emotional distress. *See, e.g.*, *In re Tina D. Francis*, No. 4-965, 2004 ECAB LEXIS 2731, *3–4 (Dec. 16, 2004) (considering claim in which claimant "reported experiencing stress at work"). Indeed, in this very case, the Department informs the Court that "there is a substantial likelihood of coverage under . . . FECA" for He's injuries "resulting from [the] alleged assault, battery, and false imprisonment at his home." Mem. from Adam Calendrillo to Matthew M. Graves (Jun. 29, 2023), Dkt. 26-1.[4] Because the Department has presented non-frivolous arguments that FECA will cover He's claims,

---

[4] Even though the Department's memorandum is not contained in or incorporated into He's complaint, the Court may consider it because the presence or absence of FECA coverage raises jurisdictional issues. *Doe v. Wash. Metro. Area Transit Auth.*, 453 F. Supp. 3d 354, 361 (D.D.C. 2020) (The court "may look to documents outside of the complaint in order to evaluate whether or not it has jurisdiction to entertain a claim.").

the Court concludes that He's injuries are not "clearly [un]compensable under [FECA]." *Daniels-Lumley*, 306 F.2d at 771.

It is true that FECA deals with "the *disability* or *death* of an employee resulting from personal injury" and that He does not obviously allege injuries leading to death or disability. Pl.'s Sur-Reply Mem. of L. at 3, Dkt. 29 (quoting 5 U.S.C. § 8102(a)) (emphasis added). All the same, the Department has the final say over FECA determinations, and the Department has applied FECA in circumstances arguably similar to He's. *See Tina D. Francis*, 2004 ECAB LEXIS 2731 at *3–4. That is enough to raise "a 'substantial question' as to whether FECA" applies. *Kalil v. Johanns*, 407 F. Supp. 2d 94, 100 (D.D.C. 2005). Nor will the Court order "an evidentiary hearing to test" the Department of Labor's "memo." Pl.'s Sur-Reply Mem. of L. at 5. The Department is entitled to a presumption that it issued its memorandum in good faith, and He has not offered evidence to rebut that presumption. *United States v. Chem. Found.*, 272 U.S. 1, 14–15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."). To the extent that He contends that discovery might undermine the facts on which the Department's position is based, the proper venue for such contentions—at least in the first instance—is the Department's own administrative process. *Daniels-Lumley*, 306 F.2d at 771.

The Court will stay proceedings on Counts III through V of He's complaint pending a FECA determination by the Department of Labor. *See Reep v. United States*, 557 F.2d 204, 208 (9th Cir. 1977) ("[I]f there is a substantial question as to FECA coverage, the district court will generally stay the FTCA action pending a determination by the Secretary of Labor.").

### D. Assault on He's Family

Finally, the Court will dismiss Count VI of He's complaint, alleging assault on He's family, for failure to state a claim.

Under the FTCA, "[t]he United States shall be liable" for certain torts of its employees "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §§ 2671, 1346(b)(1). Because He alleges that Peart assaulted his family in Virginia, his complaint must plead a plausible case for assault under Virginia law.

In Virginia, "the tort of assault consists of an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in the other person's mind a reasonable apprehension of an imminent battery." *Koffman v. Garnett*, 574 S.E.2d 258, 261 (Va. 2003). "'Imminent' does not mean immediate," but it does mean "that there will be no significant delay" between the apprehension and the contact. Restatement (Second) of Torts § 29 cmt. b (1965). For example, "menacing[ly] point[ing] at another with a gun" threatens imminent injury if "the gun [is] within shooting distance" or "seems to be so to the person assaulted," but not otherwise. *Carter v. Commonwealth*, 606 S.E.2d 839, 841 (Va. 2005) (quoting *Lynch v. Commonwealth*, 109 S.E. 418, 420 (Va. 1921)).

He's complaint does not plead a plausible case that Peart assaulted any member of his family. In relevant part, it alleges that Peart (1) knocked loudly on He's door, (2) cursed at him, (3) grabbed his wrist, (4) used his hands to make a gun-like gesture at He's son, and (5) called his son a "chink." Compl. ¶¶ 91, 104–05, 107, 114. It does not allege that Peart advanced beyond the doorway to within striking distance of He's family, that he verbally threatened to harm them, or that he brandished a firearm in their direction. Although these acts may have created a threatening environment and certainly reflect deplorable conduct by a law enforcement officer, they did not

11

plausibly suggest that Peart was poised to injure anyone in He's family without "significant delay." Restatement (Second) of Torts § 29 cmt. b; *cf. Bowles v. May*, 166 S.E. 550, 553 (Va. 1932) (holding that no jury could find assault based on "testimony that [defendant] shook his finger at plaintiff" after an angry conversation "while the parties were seated and the plaintiff was some eight feet or more [away] from where [the] defendant was sitting"); *Berkley v. Commonwealth*, 14 S.E. 916, 916 (Va. 1892) (finding no assault when defendant threatened victim with violence, then approached victim while "gesticulating," but "did not strike" and "did not attempt to strike" him) (cited favorably in *Carter*, 606 S.E.2d at 841).

The Court recognizes that detailed fact pleading is not required to state a claim for relief under the Federal Rules. *Cf.* Pl.'s Mem. of L. in Opp. at 10. Even so, a complaint must state plausible claims to survive a motion to dismiss. He's does not.

## CONCLUSION

For these reasons, the Court will dismiss Counts I, II, and VI of He's Second Amended Complaint without prejudice and stay action on the remaining counts pending a FELA determination by the Secretary of Labor. A separate order accompanies this memorandum opinion.

*Dabney L. Friedrich*
DABNEY L. FRIEDRICH
United States District Judge

November 13, 2023